UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KENNETH AND LEE WYRICK,               :

        Plaintiffs,

v.                                    :         No. 3:06-cv-578(AHN)

UNDERWRITERS AT LLOYD'S, LONDON,

        Defendant.                   :

## RULING ON MOTION FOR RECONSIDERATION

The plaintiffs Kenneth and Lee Wyrick ("the Wyricks") have filed a motion for reconsideration [doc. # 121] of the court's ruling on the parties' cross-motions for partial summary judgment ("Ruling"). For the reasons that follow, the court denies the Wyricks' motion.

## STANDARD

The Second Circuit has held that the standard for granting a motion for reconsideration is strict. See Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). In fact, "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Id. (citations omitted). In addition, a court may grant a motion for reconsideration based on the following grounds: (1) an intervening change in controlling law; (2) the availability of newly discovered evidence; and (3) the need to correct clear error or to prevent manifest injustice. See Virgin Atl. Airways,

Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992). However, a motion for reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided." Shrader, 70 F.3d at 257.

## DISCUSSION

The court assumes the parties' familiarity with the facts of this case. Presently, the Wyricks argue that they timely accepted Lloyd's offer to renew their policy; they were entitled to notice of cancellation; and the Stone Agency ("Stone") was Lloyd's of London's ("Lloyd's") or Joseph Krar & Associates' ("Krar") agent. The court already addressed these arguments and the Wyricks fail to persuade the court to reconsider its ruling pursuant to the grounds set forth in Shrader and Virgin.

I. The Wyricks' Untimely Acceptance of the Renewal Quote

The Wyricks argue that the court erred in ruling that the policy had expired and that their acceptance of the renewal quote was therefore untimely. The Wyricks emphasize that the renewal quote contained no reference to the policy's "unrealistic" deadline of 12:01 a.m. on April 9, 2005. They argue that the renewal quote is an offer to create a new contract of insurance, separate from the existing policy, and therefore the 12:01 a.m. policy expiration is immaterial.

The court agrees that a renewal quote is an offer to create a new contract of insurance coverage, but by its very title it is

2

an offer to renew the policy prior to or simultaneous with the expiration of the existing policy. (Ruling at 16-17). It is undisputed that the Wyricks did not accept the offer to renew before the existing policy lapsed. Counsel for the Wyricks admitted at oral argument that the policy lapsed at 12:01 a.m. and the Wyricks did not place the renewal documents in the mail until approximately 19 hours later. (Ruling at 4). The policy did not automatically renew at the time the Wyricks placed the documents in the mail as they contend, because the offer to renew lapsed when the policy lapsed. (Ruling at 16-17; Ex. 3 to Lloyd's Supplemental Statement of Undisputed Facts (Manello Dep. at 54)).

The Wyricks state that the 12:01 a.m. deadline is "unrealistic," yet they provide the court with no alternative deadline. There is nothing ambiguous about the deadline, and nothing about the Wyricks' actions or statements support their contention that the renewal quote was ambiguous or that they were

confused regarding the renewal process.[1]  Indeed, Kenneth Wyrick admitted that he had no idea of the date in April that the policy was going to expire and he stated that he knew what he was required to do to renew the policy.[2]  The Wyricks had more than five months from the date that they first received the renewal quote and did nothing until after the existing policy had expired.

Further, the Wyricks' attempt to distinguish Wilson v. CNL Ins. Am. Inc., 12 F. Supp. 2d 1284, 1285 (M.D. Ala. 1998), from the facts of this case is unavailing.  Wilson holds that the renewal notice, which listed only the expiration date of the policy and not the exact time, was not ambiguous because the declarations page of the insurance policy clearly stated that the policy expired on August 21, 1995 at 12:01 a.m.  (Ruling at 12-13).  Here, just as in Wilson, the declarations page of the

---

[1] The Wyricks also point to Simses v. North American Co. for Life & Health Insurance, 175 Conn. 77 (1978), in support of its argument that the renewal quote was ambiguous.  Simses is not germane to this case for several reasons.  First, it involved an initial application for a life insurance policy, not a renewal, as in the case at bar.  Id. at 78.  Second, unlike the Wyricks, the insured paid the premium and supplied all of the requested documentation at the time that he submitted his application.  Id.  Third, the court found that the "binder receipt" that the insurance company provided was ambiguous because it purported to provide coverage immediately upon receipt of the premium.  Id. at 87-88.  The renewal quote here specifically states that, as an offer, it does not create coverage.  Thus, the facts of this case cannot be appropriately compared to those in Simses.

[2] See Ex. 12 to Lloyd's Statement of Undisputed Facts (K. Wyrick Dep. at 56).

4

policy provided the date and time of the policy's expiration, and the renewal quote provided only the date. Accordingly, the renewal quote here was not ambiguous and the Wyricks present nothing to the court that would persuade it to reconsider its ruling on this issue.

Next, the Wyricks reassert an argument they previously abandoned: that the renewal quote had to provide them with notice that the policy would be "cancelled" if they failed to renew it in a timely fashion. Connecticut law is clear that if a policy expires by its own terms, the insureds are not entitled to a notice of cancellation. (Ruling at 23-24). The Wyricks cite to cases where an insurer attempts to cancel a policy during the policy period for nonpayment of premiums, see, e.g., Automobile Club Ins. Co. v. Donovan, 550 A.2d 622, 623-24 (R.I. 1988), and a case where the insurer decided not to offer to renew the policy, as in Staley v. Municipal Mut. Ins. Co. of W. Va., 282 S.E.2d 56, 58 (W. Va. 1981). These cases present an entirely different scenario from the one in this case, where Lloyd's offered to renew the expiring policy and the Wyricks failed to accept in a timely manner. The Wyricks even conceded at oral argument that Connecticut does not require an insurance company to send a notice of cancellation to an insured where the insured simply fails to renew. The Wyricks present no new evidence on this issue and the court will not reconsider its previous ruling.

5

II. Lloyd's Receipt of Notice

The Wyricks advocate in their first argument, addressed above, that the renewal quote alone controls the terms of the offer to create a new insurance contract. Now, the Wyricks contend that the court should disregard the language of the renewal quote because it did not contain "the true terms of acceptance." Specifically, the Wyricks point out that in Lloyd's discovery responses, it stated that it only needed notice of the Wyricks' intent to renew, not the documents listed on the renewal quote. This argument is inapposite because it is undisputed that Lloyd's received no notice of any kind, in the form of documents or otherwise, from the Wyricks at any time on or before April 9, 2005. (Ruling at 16).

Further, the Wyricks reassert their argument that the mailbox rule applies in this case. Though the court acknowledged in its ruling that the mailbox rule is recognized in Connecticut, it also noted the pivotal fact that an insurance company is free to specify a date by which it must receive notice of an insured's intent to renew, as Lloyd's did in this case. (Ruling at 14-21). As the court has stated, even "viewing the facts in a light most favorable to the Wyricks, some sort of notice, regardless of the medium, had to be received, at the latest, on the effective date of coverage, namely April 9, 2005." (Ruling at 16). The Wyricks do not and cannot dispute that Krar, Lloyd's or even Stone

6

received nothing - not a telephone call, not a facsimile, not a mailing - by April 9, 2005. Accordingly, this argument is meritless.

   III. <u>Stone's Agency Status</u>

The Wyricks argue again that Stone was Krar's agent, or in the alternative, that Stone was a dual agent for both Krar and the Wyricks. They argue that because Stone was Krar and Lloyd's agent, their mailing on the evening of April 9, 2005 to Stone was timely and sufficient notice of their intent to renew the policy. The Wyricks fail to present any new evidence or case law to persuade the court to reconsider its ruling on this issue. The court disagrees with the Wyricks' position for the reasons stated in its ruling, but will restate them in part here.

Stone worked to procure insurance on the Wyricks' behalf, looked for insurance in the standard market for the Wyricks during the renewal process, and then offered to assist the Wyricks with the renewal of the Lloyd's policy when it determined that the Wyricks could not procure standard insurance.[3] The only

---

[3] The Wyricks represent that the court stated in its ruling that the Wyricks never had any direct contact with Lloyd's or Krar, even though Krar sent a copy of the renewal quote to the Wyricks. In fact, when describing Stone and the Wyricks' initial procurement of the homeowner's policy with Lloyd's, the court stated: "The Wyricks never had any direct contact with Krar or Lloyd's during the policy <u>purchase</u> process." (Ruling at 2) (emphasis added). This has nothing to do with the policy <u>renewal</u> process that took place a year later. The court describes the renewal process in the latter part of the facts section. (Ruling at 2-4).

7

actions Stone took on behalf of Krar and Lloyd's was to collect the insurance premium and the relevant paperwork. The Wyricks assert that, pursuant to Connecticut law, these two actions make Stone an agent for Krar and the Wyricks, and they cite Passarello v. Lexington Insurance Co., 740 F. Supp. 933 (D. Conn. 1990), in support of this argument. The court directs the Wyricks to page 21 of its ruling, where the court noted that the holding in Hallas v. Boehmke & Dobosz, Inc., 239 Conn. 658, 675 (1997), applied to this issue. In Hallas, the Connecticut Supreme Court succinctly stated:

> We decline, moreover, to hold that a broker may become an agent for an insurer simply by collecting and remitting premiums for the insurer's ultimate benefit. To the extent that the language in Passarello or Teleco Oilfield Services, Inc., adopts this proposition, we reject it as a matter of state law. To do otherwise would effectively make agents out of all independent insurance brokers.

Id. at 675 n.16. It is also important to note that Hallas deals specifically with the surplus lines insurance market, whereas Passarello and Teleco Oilfield Services, Inc. v. Skandia Insurance Co., 656 F. Supp. 753, 757 (D. Conn. 1987), do not. In addition, the brokerage agreement between Krar and Stone explicitly states that Stone is not Krar or Lloyd's agent. (Ruling at 21). Accordingly, the court reiterates its conclusion that the Wyricks' argument that Stone was Lloyd's or Krar's agent is meritless.

IV. Admissibility of Affidavits

The Wyricks argue that the court should not have considered Teresa Manello's ("Manello") affidavit, the brokerage agreement between Krar and Stone, or the accompanying affidavits from the respective companies' presidents. They argue that Lloyd's failed to provide the brokerage agreement and the affidavits in a timely manner.

The Wyricks provide no new evidence to support their argument that the court "improperly considered" the affidavits, nor do they assert that the court overlooked some important case law on the subject. The Wyricks have not argued that the affidavits fail to comply with the standard of admissibility. They argue only that Lloyd's did not produce the documents in a timely fashion during discovery. The Wyricks, however, never filed a motion to compel or a motion to strike.[4]

According to Fed. R. Civ. P. 37(c)(1), a party is not allowed to use information or a witness to support a motion if it failed to disclose them in a timely fashion, "unless the failure

---

[4] A motion to compel is appropriate if, after conferring with the opposing party, it nevertheless fails to produce the requested documents. See Fed. R. Civ. P. 37(a). On motion, the Wyricks also could have sought sanctions. See Fed. R. Civ. P. 37(d)(1)(A). In addition, a motion to strike is an appropriate manner for a party to challenge an affidavit that the opposing party submitted in support of a summary judgment motion. See Newport Elecs., Inc. v. Newport Corp., 157 F. Supp. 2d 202, 208 (D. Conn. 2001); cf. Dragon v. I.C. System, Inc., 241 F.R.D. 424, 426 (D. Conn. 2007).

9

is substantially justified or is harmless." See id.[5] However, "the exclusion of evidence is an extreme remedy" and should only be utilized "in those rare cases where a party's conduct represents flagrant bad faith and callous disregard" for the Federal Rules. Dwyer v. Guilford Bd. of Educ., Civ. No. 3:05cv1155, 2007 WL 1232039, at *2 (D. Conn. Apr. 26, 2007) (citing Update Art, Inc. v. Modiin Publ'g. Ltd., 843 F.2d 67, 71 (2d Cir. 1988); Commercial Data Servers, Inc. v. Int'l Bus. Mach. Corp., 262 F. Supp. 2d 50, 62 (S.D.N.Y. 2003).

Exclusion of the affidavits and agreement are not justified in this case. Manello's affidavit encompasses a portion of her deposition testimony in the underlying state court case to which the Wyricks are parties. Lloyd's made that deposition available to the Wyricks for copying and inspection on April 30, 2007, two and a half months before Lloyd's filed its motion for summary judgment. The Wyricks were therefore on notice at that time that Manello was a person "likely to have discoverable information" that Lloyd's would "use to support its claims or defenses." See Fed. R. Civ. P. 26(a)(1)(A).[6] Nothing in her affidavit is

---

[5] As of December 1, 2007, the language of Fed. R. Civ. P. 37(c) changed as part of the "general restyling of the Civil Rules to make them more easily understood" and the changes are intended to be "stylistic only." Fed. R. Civ. P. 37 Advisory Committee Note (2007). The court quotes from the revised language.

[6] Lloyd's noted that neither party made initial disclosures and the Wyricks do not dispute this.

10

materially different from her deposition testimony, including the fact that Stone was not Krar's agent, and it is therefore admissible.  See Dragon v. I.C. Sys., Inc., 241 F.R.D. 424, 426 n.3 (D. Conn. 2007) (holding that deposition testimony from a prior proceeding is admissible in support of a motion for summary judgment); (Ex. 3 to Lloyd's Supplemental Statement of Undisputed Facts (Manello Dep.)); (Ex. 15 to Lloyd's Statement of Undisputed Facts (Manello Dep.)).  After reviewing her state court deposition, the Wyricks could have sought to depose Manello further in connection with this case, but they did not.

With respect to the brokerage agreement between Stone and Krar, Joseph Krar testified to the contents and scope of that agreement in his deposition in May 2007, months prior to the motions for summary judgment.  (Ex. 3 to Lloyd's Sur-reply to Wyricks' Reply to Lloyd's Opp. to Wyricks' Cross-Mot. for Summ. J. (Krar Dep. at 69)); (Ex. 11 to Lloyd's Statement of Undisputed Facts (Krar Dep. at 67-68)).  In the interim, Lloyd's attempted several times to locate a signed copy of the brokerage agreement.  Ultimately, Krar and Stone determined that there was no signed agreement, and therefore the two companies submitted an unsigned brokerage agreement with affidavits from the head of each company that stated the agreement governed the companies' relationship.  Lloyd's states that the absence of a signed agreement between the companies was not confirmed until late September 2007.  The

11

affidavits were prepared and signed on October 1, 2007 and October 24, 2007, respectively. Hence, the failure to submit a copy of the agreement prior to October is "substantially justified," and in light of Krar's testimony on the subject, is also "harmless." Fed. R. Civ. P. 37(c)(1); see Dwyer, 2007 WL 1232039 at *2.

In addition, where affidavits are submitted on summary judgment they "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001) (quoting Fed. R. Civ. P. 56(e)). As the court stated at footnote 10 on page 21 of its ruling, the affidavits comply with Rule 56(e) and are therefore admissible.

The Wyricks were aware of the contents of the brokerage agreement and the scope of Manello's testimony months before the motions for summary judgment were filed and therefore they cannot claim harm or surprise. Accordingly, the Wyricks' argument on this issue is baseless.

## CONCLUSION

For the foregoing reasons, the Wyricks' motion for reconsideration [doc. # 121] is DENIED.

SO ORDERED this _11th_ day of March, 2008 at Bridgeport, Connecticut.

_____/s/_____
Alan H. Nevas
United States District Judge