UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KENNETH WYRICK, ET AL., | : | |
| Plaintiffs, | : | |
| | : | |
| NEWPORT INSURANCE COMPANY, | : | CIVIL ACTION NO. |
| Intervenor Plaintiff, | : | 06-cv-0578(JCH) |
| | : | |
| v. | : | |
| | : | |
| UNDERWRITERS AT LLOYD'S, LONDON, | : | MARCH 30, 2009 |
| | : | |
| Defendant. | : | |

**RULING ON KENNETH AND LEE WYRICK'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 137)**

## I.   INTRODUCTION

In Count Five of the Amended Intervening Complaint (Doc. No. 164), Newport Insurance Company ("Newport"), as an intervenor plaintiff, brings a negligence cross-claim against Kenneth and Lee Wyrick (the "Wyricks"). The Wyricks have moved for summary judgment (Doc. No. 137) on this Count on the ground that, inter alia, there is no common law cause of action for a mortgagee, or its assignee, to bring a negligence claim against a mortgager. For the foregoing reasons, the court denies the Motion for Summary Judgment.

## II.   STANDARD OF REVIEW

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts

1

showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

Generally, when assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

### III. FACTUAL BACKGROUND[1]

On or about April 9, 2004, Kenneth and Lee Wyrick (the "Wyricks") executed and delivered to Argent Mortgage Company, LLC ("Argent"), a Fixed Rate Note in the original principal amount of $357,000, which evidenced a loan (the "Loan") from Argent to the Wyricks in that amount. Aff. Jackson ¶ 4; see also Pl's Exh. A. In order to secure their obligations under the Loan, the Wyricks executed and delivered to Argent an Open End Mortgage Deed (the "Mortgage"), pursuant to which Argent was given a first mortgage security interest in the property located at 457 New Road, Avon, Connecticut (the "Property"). See Aff. Grzeskowiak ¶ 5; see also Newport's Mem. in

---

[1] For the purposes of the instant Motion, the court accepts facts undisputed by the parties as true and resolves disputed facts in favor of the non-moving party, where there is evidence to support his allegations.

Opp. Exh. B.  Paragraph 5 of the Mortgage states:

> "[b]orrower should keep the improvements now existing or erected on the Property insured against loss by fire, hazards included within the term 'extended coverage,' and any other hazards . . . . If Borrower fails to maintain any of the coverages . . . Lender may obtain insurance coverage, at Lender's option and Borrower's expense . . . . Such coverage shall cover Lender, but might or might now protect Borrower. . . ."

See Newport's Mem. in Opp. Exh. B.

On or about April 14, 2004, Argent assigned its interest in the Mortgage to Ameriquest Mortgage Company ("Ameriquest").  On the same day, Ameriquest assigned its interest in the Mortgage to Deutsche Bank National Trust Company ("Deutsche Bank").  Aff. Jackson ¶ 7.  The conveyance of the Loan to Deutsche Bank was pursuant to a Pooling and Servicing Agreement (PSA), dated as of July 1, 2004, by and between, inter alia, Countrywide Home Loans Servicing ("Countrywide"), Ameriquest, and Deutsche Bank.  Aff. Grzeskowiak ¶ 10.  On or about April 14, 2004, Countrywide was engaged, pursuant to the PSA, to act as a Loan Servicer with respect to the Loan and has continued to service the Loan since that time.  Id. ¶ 11; see also Aff. Jackson ¶ 8.

On or about October 9, 1999, Countrywide entered in a blanket mortgage protection policy ("Forced Place Policy") issued by Newport, a subsidiary of Balboa Insurance Company ("Balboa").  See Newport's Mem. in Opp. Exh. E.  The period for this Policy continued from October 9, 1999, until such time as it was canceled.  Aff. Willeford ¶ 4.  The Forced Place Policy afforded loss coverage to Countrywide for residential property in which Countrywide had an interest as a mortgagee or servicing

3

agent.  Mem. in Opp. Exh. E at 1.[2]

On or about October 20, 2004, Countrywide obtained coverage under the Forced Place Policy for loss to the Property effective August 13, 2004.  See id. Exh. F.  On the same day, Countrywide mailed the Wyricks a Certificate of Coverage Placement in which it notified the Wyricks that, as a result of their failure to provide Countrywide with evidence of insurance coverage, it obtained coverage for the Property under the Forced Placed Policy.  Id.  In a section of that Policy entitled "Important Notice," the Certificate of Coverage Placement stated:

> "YOU ARE NOT AN INSURED UNDER THIS POLICY AND ARE NOT ENTITLED TO RECEIVE THE PROCEEDS FROM THE POLICY IN THE EVENT OF A LOSS OR DAMAGE TO YOUR PROPERTY.  THIS POLICY PROTECTS ONLY THE MORTGAGEE'S INTEREST IN THE DESCRIBED LOCATION."

Id. (emphasis in original).

At the time of the loss, the Wyricks failed to procure their own insurance for the Property, pursuant to the Mortgage.  The Wyricks had obtained insurance, but that policy lapsed, and the Wyricks failed to renew it before the loss.  See Ruling (Doc. No. 113).

On April 10, 2005, the Property was destroyed by fire which originated from a chiminea (outdoor clay fireplace) on the porch.  As a result of the fire, on or about April 16, 2005, Countrywide, on behalf of Deutsche Bank, made claim upon Newport under

---

[2] The "Coverages" portion of the Forced Place Policy states:

> "Coverage under this section applies only to residential property for which you have an interest as mortgagee, servicing agent by written agreement, or obtained through foreclosure or voluntary conveyance; and only to the Described Location shown on the Notice of Premium."

Mem. in Opp. Exh. E at 1.

the Forced Place Policy.  See Aff. Grzeskowiak ¶ 22.  On or about April 18, 2005, Newport made payments to Deutsche Bank on its claim under the Forced Place Policy in the amount of $309,619.86.

Newport now claims that, in accordance with the express terms of the Mortgage, the Wyricks owed a duty to Deutsche Bank, to insure the Property and to prevent its destruction.  It further claims that they breached this duty, and it brings this action in negligence as a result.

## IV.   DISCUSSION

In moving for summary judgment, the Wyricks assert three arguments.  First, they claim that there is no right of subrogation against them because they were implied insureds on the Forced Place Policy.  Second, the Wyricks argue that, because they were the owners of the Property, the actions that can be brought against them, concerning the Property, are limited.  Namely, the Wyricks argue that there is no basis in law for a common law action of negligence against them.  Finally, they argue that they owe no duty to Deutsche Bank and, by way of subrogation, owe no duty Newport.

### A.   Newport's Right of Subrogation

The Wyricks first claim that, because Newport did not make payment to Countrywide (the named insured), it cannot bring this subrogation claim against them.  Wyricks' Mem. in Supp. at 9 n.7.[3]  Newport asserts that this argument "fails to take into consideration the relationship between Countrywide and Deutsche Bank."  Mem. in

---

[3] The court notes that the original briefs filed in this matter named Balboa Insurance Company as the intervening plaintiff.  However, on January 28, 2009, the court granted a Motion to Amend to substitute Newport as the intervening plaintiff.  Thus, any reference to Balboa in the briefs is substituted as Newport in this Ruling.

Opp. at 8. According to the Affidavit of Stephen Grzeskowiak, Countrywide's First Vice President, all actions taken by Countrywide with respect to obtaining coverage and payment under the Forced Place Policy were taken pursuant to Countrywide's obligations to Deutsche Bank in accordance with the PSA. Aff. Grzeskowiak ¶ 12. Moreover, Countrywide was given power of attorney by Deutsche Bank to carry out its duties pursuant to the PSA. Id. It further points to the language in the Forced Place Policy that contemplates subrogation. Mem. in Opp. Exh. E at 8. That Policy allows for the transfer of rights of recovery against others to Newport. The relevant provision states:

> "If any person or organization to whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them."

Id. This clear language is persuasive. However, even without this subrogation provision in the Forced Place Policy, this court would still agree with Newport that it has a right of subrogation against the Wyricks.

"[S]ubrogation is a highly favored doctrine which courts should be inclined to extend rather than restrict." Wasko v. Manella, 269 Conn. 527, 542 (2004). The law has recognized two types of subrogation: conventional; and legal or equitable." Id. at 532. Conventional subrogation arises out of an agreement and "occurs where one having no interest or any relation to the matter pays the debt of another, and by agreement is entitled to the rights and securities of the creditor so paid." Id. In contrast, equitable subrogation does not arise out of a contract; instead, it is "designed to promote and to accomplish justice, and is the mode which equity adopts to compel

6

the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it." Id.  Because the Forced Place Policy contained a subrogation clause, the subrogation analysis would seemingly arise under conventional subrogation. However, the Supreme Court of Connecticut has recognized that conventional subrogation requires that the payee of the debt not have a preexisting interest in the matter, id., which is not the case here because the insurer, Newport, clearly had interest in the matter before the loss occurred.  Further, subrogation clauses are not necessary because all rights of subrogation have their basis in principles of equity.  Id. ("while a right of true equitable subrogation may be provided for in a contract the exercise of the right will have its basis in general principles of equity rather than in contract, which will be treated as being merely a declaration of principles of law already existing.") (internal citations and quotations omitted); see also id. n.3 (citing various articles and authorities for the proposition that subrogation clauses are not necessary because subrogation is a matter of equity).  Accordingly, one who proceeds under the theory of equitable subrogation steps "into the shoes of the party it paid in order to recover the payments that it made," in order to "prevent the unjust enrichment of the party whose debt it paid. Id. at 548 (quoting Westchester Fire Ins. Co. v Allstate Ins. Co., 236 Conn 362, 367 (1995) (internal quotations omitted).

  Pursuant to the Forced Place Policy, Countrywide, on behalf of Deutsche Bank, made claim upon Newport.  Newport then made payment to Deutsche Bank on its claim in the amount of $309,619.86.  Now Newport seeks to step into the shoes of Deutsche Bank in order to recover payment from the Wyricks, the alleged tortfeasors.  In accordance with principles of equitable subrogation, the court concludes that Newport

can do this. As stated by the Connecticut Supreme Court, there is,

> "no logical reason to permit a tortfeasor to be unjustly enriched by virtue of having its debt paid by the insurance company of a party who had the foresight to obtain insurance coverage, and thus to escape all liability for its wrongdoing, simply because the insurance company was not permitted to participate in a suit against the tortfeasor in order to recover the money that it had paid to its insured but which was property payable by the tortfeasor."

Id. Thus, the court concludes there are no material issues of fact on this issue and that Newport, the insurer, can bring a claim of equitable subrogation against the Wyricks, the alleged tortfeasor.

As a second ground for summary judgment, the Wyricks claim that they are implied insureds of the Forced Place Policy and thus, because they are beneficiaries of the Policy, there can be no right of subrogation against them. Wyricks' Mem. in Supp. at 9 n.7. It is true that an insurer is barred from asserting a right of subrogation against its own insured. 16 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 224:1(3d ed. 2005). To support their argument, the Wyricks cite Dillulo v. Joseph, 259 Conn. 847 (2002), in which decision the Connecticut Supreme Court addressed the issue of "whether, in the absence of a specific agreement covering the question, a fire insurer of leased premises has a right of subrogation against a tenant for negligently causing a fire." Id. at 848. In answering this question, the Dillulo Court concluded that a landlord's insurer did not have a right of subrogation against a tenant who negligently had damaged the insured property. The Dillulo Court reasoned that "it would be inappropriate to create a default rule that allocates to the tenant the responsibility of maintaining sufficient insurance to cover a claim for subrogation by his landlord's insurer." Id. at 854. Requiring a tenant to obtain liability insurance would constitute

8

"economic waste." Id.

The Wyricks argue that the fact that the tenant was an implied insured on the landlord's insurance policy was instrumental in the Dillulo Court's holding. However, the Dillulo Court actually rejected this rationale as a basis for its holding. "[W]e agree that, under the traditional rules of insurance law, a tenant is not a coninsured on his landlord's fire insurance policy simply because he has an insurable interest in the premises and pays rent." Id. at 853. Instead, the Court determined that whether subrogation would apply would have to be determined on a case-by-case basis. Id.

Newport argues that Dillulo is distinguishable and inapplicable to the Wyricks. First, in Dillulo, the issue was what to do in the absence of an express agreement between the parties, in Dillulo's case, landlord and tenant. Id. at 850. Conversely, the Mortgage in this case contained an express requirement that the Wyricks keep the Property insured against loss by fire. See Newport's Mem. in Opp. Exh. B. Further, the Dilullo Court rejected the proposition that, in the absence of an express agreement, the tenant is automatically a coninsured on the landlord's insurance policy because he pays rent and has an interest in the property.[4]

Even if Dilullo supported the claim the Wyricks are making, which it does not, the

---

[4] The Wyricks argue that it paid the premiums on the Forced Place Policy. According to the Wyricks, the rent in Dillulo is equivalent to the premiums that the Wyricks claim to have paid, and therefore they cannot be sued. This argument is akin to that which the Dillulo Court rejected when it stated that, just because a tenant has an insurable interest and pays rent, it does not become a coninsured.

It is undisputed that the Wyricks paid some of these premiums because the premium cost was added to the Wyricks' escrow payment. However, Newport contests that the Wyricks have fully reimbursed Countrywide for the entire premium. Grzeskowiak Aff. at ¶ 26. This disputed fact is not material because of the express agreement in the Mortgage requiring the Wyricks to obtain insurance and the express agreement in the Certificate of Coverage Placement indicating that Wyricks were not insureds. Mem. in Opp. Exh. F.

Certificate of Coverage that Newport sent to the Wyricks after it obtained the Forced Place Policy with respect to the Property specifically noticed the Wyricks that the Policy did not protect them. It stated that the Wyricks "are not an insured under this policy . . . . This policy protects only the mortgagee's interest in the described location." Mem. in Opp. Exh F. (emphasis in original omitted). As such, not only were the Wyricks not implied insureds: the Policy expressly stated they were not insureds. Therefore, the Wyricks' claim that they are implied insureds is unsustainable.

Additionally, the Wyricks argue that the Forced Place Policy benefitted them and, because they were beneficiaries, a subrogation action cannot be brought against them. The provision they claim benefits them is found in an endorsement in the Forced Place Policy dated June 10, 2002. The endorsement states:

> "Loss or damage, if any shall be adjusted with and made payable to YOU [Countrywide], in the event that the covered amount of a covered loss exceeds Your interest in the covered property and a mortgagor is in legal possession of the insured Residential Property or Commercial Property at the time of payment for loss or damage payment, will be made to You and the mortgagor."

Mem. in Supp. Exh. A. (emphasis omitted). This provision, according to the Wyricks, makes them beneficiaries of the Policy because it allows for any amount that exceeds the outstanding balance on the loan, to be paid to them. However, the same endorsement reads, "[n]otwithstanding the foregoing, nothing contained in this endorsement shall make a Mortgagor in legal possession of the insured Residential Property or Commercial Property an insured or an additional insured under this policy." Id. This express language makes clear that the Wyricks were not intended to be insureds on the Forced Place Policy.

However, even if this endorsement language made the Wyricks "beneficiaries,"

10

the Wyricks cite no Connecticut law that states that a subrogation claim cannot be brought against one who "benefits" from the policy.[5] The Wyricks do cite caselaw outside of Connecticut, but the court finds these cases unpersuasive. For instance, the Wyricks rely on Foshee v. Lloyds, New York, 619 F.2d 1104 (5th Cir. 1980), for the proposition that the right of an insurer to bring a subrogation action depends on who purchases the insurance or for whose benefit it was purchased. Mem in Supp. at 12. Indeed, the Foshee court did find that, in Alabama, "an insurer may not enforce a putative subrogation if the mortgagor procured the policy for his own benefit and at his own expense." 619 F.2d at 1110. However, the court also stated that if "the insurance was purchased for the mortgagee's benefit alone, the insurer may become a subrogee of the mortgagee's rights against the mortgagor." Id. (emphasis added). Accordingly, Foshee does not help the Wyricks because here the insurance was purchased for the mortgagee's benefit only, as evidenced by the express language in the Forced Place Policy.

The Wyricks also rely on a case in which the Supreme Court of North Carolina stated that when a mortgagee purchases "with is own funds insurance solely for his

---

[5] The Wyricks do cite Conn. Gen. Stat. §38a-1(12) for the proposition that Connecticut would consider the Wyricks "insureds" under the Forced Place Policy. Mem. in Supp. at 8. This section of the Connecticut General Statutes provides a definition of "insured." It states:

> "Insured" means a person to whom or for whose benefit an insurer makes a promise in an insurance policy. The term includes policyholders, subscribers, members and beneficiaries. This definition applies only to the provisions of this title and does not define the meaning of this word as used in insurance policies or certificates."

The Wyricks failed to cite the last sentence of this definition in their Memorandum, which explicitly states that the definition does not apply to the word as it is used in insurance policies. As such, this court finds that this definition is unpersuasive as the issue in this case concerns the interpretation of an insurance policy and not the Connecticut General Statutes.

protection," the insurer is "subrogated to the rights of the mortgagee against the mortgagor." Employer's Fire Ins. Co. v. British America Assurance Co., 259 N.C. 485, 487 (1963). That Court continued, stating, "[w]here, however, the insurance is procured by the mortgagee pursuant to the authorization and at the expense of the mortgagor, no right of subrogation exists . . . ." Id.

In light of the express language in the Forced Place Policy, the court is persuaded that the language in the endorsement regarding excess payments means that Countrywide, on behalf of Deutsche Bank, obtained the Forced Place Policy exclusively for its own benefit. In Connecticut, "[w]here the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." Wasko, 269 Conn. at 544 n.14 (quoting Tallmadge Bros., Inc. v. Iroquois Gas Transmission System, L.P., 252 Conn. 479, 498 (2000)). Pursuant to the Mortgage, in the absence of the Wyricks procuring their own coverage, the lender had the option to obtain insurance coverage "at Lender's option and Borrower's expense," though the Mortgage made clear that "such coverage shall cover Lender, but might or might now protect Borrower." Newport's Mem. in Opp. Exh. B. Because the Wyricks had not produced evidence of their own coverage, Countrywide obtained coverage under the Forced Place Policy. Both the Forced Place Policy and the Certificate of Coverage Placement expressly provide that the Wyricks were not intended to be, and were not, insureds. Accordingly, even if the Wyricks may have been able to receive some benefit from the Policy, the court finds that, in light of the express language in the documents, the Wyricks were not intended insureds of the Forced Place Policy.

Therefore, Newport is permitted as a matter of law to bring a subrogation action against them.

      B.     <u>Liability against Owners of the Property</u>

The Wyricks claim that, because they were owners of the Property, this action cannot be brought against them. Wyricks Mem. in Supp. at 5. Indeed, in Connecticut, "the law is well settled that, except as between the immediate parties, the mortgagor before foreclosure is the owner of the property . . . while the interest of the mortgagee is mere personal estate." <u>Town of Groton v. Mardie Lane Homes, LLC</u>, 286 Conn. 280, 290 (2008).[6] The Wyricks argue that Newport, on behalf of Countrywide, had no legal right to bring a common law action of negligence against the Wyricks as owners of the Property. <u>Id.</u> at 6. For support, the Wyricks rely on <u>Cooper v. Davis</u> for the proposition that an owner is not liable for waste committed while he is in possession of the property. 15 Conn. 556, 560-1 (1843). The Wyricks claim that the fire is akin to "waste" and therefore, pursuant to <u>Cooper</u>, they cannot be held liable for negligence in causing the fire.

While the <u>Cooper</u> Court stated that a mortgagor is not liable for waste committed on the property, it did so in dictum. The issue in <u>Cooper</u> was whether the mortgagor had a valid title against the mortgagee with respect to millstones on the property. The <u>Cooper</u> Court held that, because the mortgagor was the owner of the property, ownership of the millstones attached to him, and he was free to sell them before

---

[6] Newport does not dispute that the Wyricks were owners of the Property during all relevant times. Mem. in Opp. at 9. Newport asserts that merely because the Wyricks are owners does not mean that Deutsche Bank did not have a substantial interest in the Property. <u>Id.</u> (citing <u>Red Rooster Construction Co. v. River Assocs., Inc.</u>, 224 Conn. 563, 569 (1993), for the proposition that Deutsche Bank had a substantial interest because it had legal title to the Property in the form of its security.)

foreclosure. Id; see also McKelvey v. Creevey, 72 Conn. 464, 469 (1900) (stating that in Cooper the Court held "that the incident of ownership of severed fixtures. . . is one that attaches to the estate of the mortgagor in possession before foreclosure . . . ."). Thus, the Cooper decision is not on point. Accordingly, the court is not persuaded by the dictum cited in Cooper and cannot grant summary judgment on that basis.

### C. Duty of Care

Finally, the Wyricks argue that Newport has failed to demonstrate that they owe Deutsche Bank a duty of care and, without such a duty, no action for negligence can be maintained against them. Indeed, "[n]egligence occurs where one under a duty to exercise a certain degree of care to avoid injury to others fails to do so." Dean v. Hershowitz, 119 Conn. 398, 407-408 (1935). The elements of a negligence action are "well established: duty; breach of that duty; causation; and actual injury." RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381, 383 (1994). The Wyricks argue that it owed no duty to Deutsche Bank. However, a party "may be liable in negligence for the breach of a duty that arises out of a contractual relationship." Neiditz v. Morton S. Fine & Assocs, Inc., 199 Conn. 683, 688 (1986) (finding a surveyor negligently prepared its contractual obligations in preparing a map); see also Coburn v. Lenox Homes, Inc., 186 Conn. 370, 375 (1982) ("a duty of care may arise from a contract . . . ."); Sasso v. Ayotte, 155 Conn. 525, 529 (1967) (stating "a party may be liable in negligence for the beach of a duty which arises out of a contractual relationship."). Furthermore, there need not be a breach of contract claim for a negligence action to survive. Johnson v. Flammia, 169 Conn. 491, 496 (1975) ("though there may not be a breach of contract [claim], liability may arise because of injury resulting from negligence

occurring in the course of performance of the contract.")  Thus, the question turns on whether the Wyricks had a contractual duty to Deutsche Bank,[7] and whether the negligent use of the chimnea in the course of the performance of that contractual duty is a breach of that duty.

Newport alleges that the contractual duty arises out of the Mortgage.  It argues that paragraph 5 of the Mortgage, which states that the Wyricks agree to keep the Property insured against loss by fire, combined with paragraph 7, which states that the Wyricks "shall not destroy, damage or impair the Property . . . [and] shall maintain the property from deteriorating or decreasing in value . . . ," mean that the Wyricks "undertook a contractual duty to (a) insure the Property, and; (b) prevent the destruction and/or devaluation of the Property."  Mem in. Opp. at 14.  It cannot be disputed that the Wyricks failed to insure the Property as required by the Mortgage.  See Ruling (Doc. No. 113).  Newport alleges that the Wyricks "improper and negligent use of the Chimnea" was a breach of "their express contractual duty to prevent destruction and/or devaluation of the Property."  Mem. in Opp. at 14.

Paragraph 7 of the Mortgage requires that borrower not destroy the Property and prevent it from deteriorating.  See Mem. in Opp. Exh. B at 11.  This paragraph created a contractual duty on the part of the Wyricks not to destroy the Property.  Newport claims that the negligent actions of the Wyricks destroyed the Property, and therefore they breached this contractual duty.  The court holds that, because the Wyricks had a contractual duty not to destroy the Property, and a duty of care can arise out of a

---

[7] The Wyricks claim that Newport is taking the position that the Wyricks' duty runs to Countrywide. See Wyricks' Reply at 5.  However, this court's reading of Newport's brief is that it wishes to step into the shoes of Deutsche Bank.

contract, Coburn, 186 Conn. at 375, the Wyricks may be held liable if they are found to have negligently caused the fire that destroyed the Property.[8]

## V.   CONCLUSION

For the foregoing reasons, the Wyricks' Motion for Summary Judgment (Doc. No. 137) is **DENIED**.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 30th day of March, 2009.

        /s/ Janet C. Hall
        Janet C. Hall
        United States District Judge

---

[8] The Wyricks asserted in their Memorandum that to impose this duty of care on them is against public policy but set forth no analysis supporting this assertion.